**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 02-CR-20676-ALTONAGA**

**UNITED STATES OF AMERICA,**

**v.**

**MAX DANIEL,**

**Defendant.**
_______________________________/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)**

This Court should deny Max Daniel's ("Defendant") motion for a sentence reduction based on Section 1B1.13(b)(6) for three independently sufficient reasons. *First*, the Defendant did not exhaust his administrative remedies. *Second*, even if this Court had the authority to reduce the Defendant's sentence (which it does not), Section 3553(a) compels the conclusion that no reduction is warranted. Finally, this Court should deny the motion because the Defendant's chosen procedural vehicle—Section 1B1.13(b)(6)—is not a valid exercise of the Sentencing Commission's authority.[1] The Defendant's motion should be denied without a hearing.[2]

---

[1] The United States acknowledges that this Court has already rejected the United States' reasons for why Section 1B1.13(b)(6) is not a valid exercise of the United States Sentencing Commission's authority in granting co-defendant Richard Daniel's motion. It repeats those arguments here only to preserve them for appellate review.

[2] Should the Court decide that a hearing is necessary, the United States asks that this Court appoint counsel to assist the Defendant. The United States conferred with Andrew Jacobs, the Assistant Federal Public Defender who represented co-defendant Richard Daniel. AFPD Jacobs advised that the Public Defender's Office would not accept the appointment to represent the Defendant because, in its view, there would be a conflict in representing both co-defendants.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2002, a federal grand jury indicted the Defendant, his brother Richard Daniel, and Edwin Toussaint on a 10-count indictment. The Defendant was individually charged with conspiracy to deal in firearms without a license, in violation of 18 U.S.C. § 371 (Count 1); conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846 (Count 2); distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts 3, 7, and 9); and three violations of carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts 4, 8, and 10). (DE 14). After a six-day jury trial, the Defendant was convicted on all counts. (DE 187). The Defendant received a 757-month sentence, which consisted of statutorily-mandated 660 months for the three 924(c) sentences running consecutively, 60 month sentences for the drug crimes running concurrently, and a 97 month sentence at the bottom of the Guidelines (which were then mandatory). (DE 268 at 7). The Eleventh Circuit affirmed the convictions but vacated and remanded for this Court to consider the Guidelines as advisory in light of *Booker*. *United States v. Daniel*, 173 F. App'x 766 (11th Cir. 2006). On remand, this Court sentenced the Defendant to 720 months, consisting of 60 months as to Counts 1, 2, 3, and 7 (the drug counts) to run concurrently with each other, 60 months as to the first 924(c) count (Count 4), and 300 months as to the second and third "stacking" 924(c) counts, all to run consecutively. (DE 281 at 3). The Defendant's appeal was dismissed as untimely. (DE 319).

On August 28, 2024, this Court granted co-defendant Richard Daniel's motion to reduce his sentence—over the United States' opposition—to 280 months, based on Section 1B1.13(b)(6)'s unusually long sentences provision. (DE 380). The United States timely appealed. (DE 391; DE 392). The United States has not yet filed its opening brief.

The Defendant moved for a similarly reduced sentence. (DE 400).

*A. Florida State Cases*

On May 7, 2008, a state grand jury indicted the Defendant and announced its intent to seek the death penalty. *United States v. Daniel*, Miami-Dade Case No. 07-031111-C (Dkt. Entry 2; 7). The indictment charged the Defendant with: (1) three counts of first degree murder (Counts 7, 13, 21); (2) nine counts of attempted first degree murder (Counts 3, 4, 5, 8, 9, 10, 11, 15, and 22); (3) Conspiracy to Commit First Degree Murder (Count 14); (4) conspiring to violate the Florida state Racketeering Influenced and Corrupt Organizations statute (Count 1); and (5) violating the same (Count 2). *See* Exhibit 1A. After fifteen years of litigation, the Defendant pleaded guilty to two counts of second-degree murder, in violation of Florida Statutes Section 782.04(2). He was sentenced to 181.35 months (or just over 15 years). *See* Exhibit 1B. The Assistant State Attorney assigned to the case provided a letter to the undersigned, attached as Exhibit 1C. He further provided testimony from a separate trial implicating the Defendant and a chart showing the firearms the Defendant stole in the instant federal case. *See* Exhibit 1D; and 1E.

*B. Sentence Calculations*

On October 31, 2024, the undersigned conferred with the Bureau of Prisons who advised that the Defendant had not submitted any requests for compassionate release. *See* Exhibit 2. Further, the Bureau stated that the Defendant was currently held at USP McCreary with a projected release date of January 8, 2054. He has served approximately 22 years and 3 months, which represents approximately 37.1% of his sentence. He has earned 1,067 days of good time credit. *See* Exhibit 3. He is currently held in high security. *See* Exhibit 3A.

*C. Conduct in BOP Custody*

The Defendant has eleven disciplinary infractions while in prison. As relevant here, the

Defendant has five incidents in the prior two calendar years.

i. Older Incidents

*First*, on September 23, 2002, the Defendant was sanctioned for tattooing or self-mutilating. *Second*, on October 2, 2002, the Defendant was sanctioned for fighting. *Third*, on October 11, 2002, the Defendant was sanctioned for using equipment contrary to instruction. *Fourth*, on December 16, 2002, the Defendant was sanctioned for refusing to obey orders. *Fifth*, on August 9, 2005, the Defendant was sanctioned for assaulting with serious injury. *Sixth*, on November 8, 2006, the Defendant was sanctioned for possessing a dangerous weapon. *See* Exhibit 4.

ii. More recent incidents

*Seventh*, on October 4, 2023, the Defendant was sanctioned for refusing to obey an order. According to the incident reports, the Defendant "failed to clear the metal detector" and was directed to turn around to be pat searched and, instead, "started bending over messing with his pants and socks." He was sanctioned by loss of email privileges for 90 days. *See* Exhibit 5.

*Eighth*, on November 4, 2023, the Defendant was sanctioned for holding up a message to a female staff member reading "My brother is hating on me. Let me show you what I am working with. Let me stroke it good for you. Go stand by the computer and let me stroke you and show you what I am about. I can show you what you need." After being told his comment was inappropriate, he said "Nevermind, just forget about it!" He then flushed the piece of paper down the toilet. The Defendant denied holding up the sheet of paper, but at the hearing, stated "I wasn't thinking." He was adjudicated guilty. As a result, the Defendant was stripped of 27 days of good time credit, placed in disciplinary segregation for 20 days, and lost commissary privileges and

visiting for 120 days. *See* Exhibit 6.

*Ninth*, on December 19, 2023, the Defendant was sanctioned for exposing his penis to a female nurse. According to the incident report, "[t]he inmate then started to stroke his erect penis with his left hand with up and down strokes." The Defendant denied this conduct. He was adjudicated guilty. For this, the Defendant was stripped of 27 days good time credit, placed in disciplinary segregation for 30 days, and lost e-mail and telephone privileges for 180 days. *See* Exhibit 7.

*Tenth*, on February 18, 2024, the Defendant refused to enter his cell, stating "I'm not going back in that cell with that faggot ass nigga! I'll beat y'all asses when I get out of SHU." The Defendant conceded that he admitted this conduct, explaining "I only refused to go back into the cell with that homosexual." He was sanctioned with loss of visitation for 60 days. *See* Exhibit 8.

*Eleventh*, on February 23, 2024, the Defendant was found to be masturbating with his right hand while looking directly at the female officer. The Defendant's cellmate submitted a statement that he (not the Defendant) was masturbating in question. BOP determined that the Defendant was guilty because he was positively identified by a staff member through his "unique 'milky eye.'" For this, the Defendant was stripped of 27 days good time credit, placed in disciplinary segregation for 30 days, and lost e-mail and telephone privileges for 180 days for engaging in sexual acts. *See* Exhibit 9.

## II. <u>LEGAL STANDARD</u>

Under section 3582(c)(1)(A)(i), Congress enacted a narrow exception to permit the courts to reduce a term of imprisonment (1) if the defendant demonstrates there are "extraordinary and

compelling reasons" for a sentence reduction or the defendant is at least 70 years old and has served at least 30 years in prison; (2) the relief is consistent with the Commission's relevant policy statements in U.S.S.G. § 1B1.13 and the applicable 18 U.S.C. § 3553(a) factors; and (3) the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).[3] Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons." 28 U.S.C. § 994(t). On November 1, 2023, the Commission amended the policy statement to six categories that could constitute extraordinary and compelling reasons for a sentence reduction: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons; and (6) unusually long sentence. U.S.S.G. § 1B1.13(b).

While Subsection (b)(6) provides that "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the

[3] The 18 U.S.C. § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to accomplish certain aims, such as to reflect the seriousness of the offense, afford adequate deterrence, protect the public, or the defendant's educational, medical, or correctional treatment needs; (3) the kinds of sentences available; (4) the applicable sentencing range under the guidelines; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwanted disparities among defendants; and (7) the need to provide restitution to any victim of the offense. 18 U.S.C. § 3553(a); *see also United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) ("compassionate release is discretionary, not mandatory, and c[an] be refused after weighing the sentencing factors of 18 U.S.C. [section] 3553(a).") (alterations added).

sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." § 1B1.13(b)(6).

Notably, in this circuit, courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with § 1B1.13. *See United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) ("[W]e hold that [§] 1B1.13 is an applicable policy statement that governs all motions under Section 3582(c)(1)(A). Accordingly, district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with [§] 1B1.13."). Additionally, the defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (in the context of a motion to reduce under § 3582(c)(2)); *United States v. Lonergan*, 2022 WL 426487, at *5 (S.D. Fla. Feb. 11, 2022).

## III. <u>ARGUMENT</u>

This Court should deny the Defendant's motion for three independently sufficient reasons. *First*, the Defendant has failed to exhaust his administrative remedies. *Second*, the Section 3553(a) factors counsel heavily against reducing the Defendant's sentence. *Third*, for preservation purposes, this Court lacks the ability to reduce the Defendant's sentence because 1B1.13(b)(6) is not a valid exercise of the Sentencing Commission's Congressionally-delegated authority.

### *A. The Defendant Failed to Exhaust His Administrative Remedies.*

The Defendant has failed to exhaust his administrative remedies. Section 3582(c)(1)(A) requires a request for compassionate release to be presented first to BOP for its consideration; and only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal,

may the defendant move for compassionate release in court. 18 U.S.C. § 3582(c)(2)(1). Exhaustion is mandatory. Where "Congress specific mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply." *Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998). As applied here, because Congress has mandated exhaustion and the government has asserted the Defendant's failure to exhaust as a defense, a court cannot ignore the Defendant's lack of compliance with the statute. *United States v. Leija*, 2020 WL 3547029, at *3 (S.D. Fla. Jun. 30, 2020) (Altman, J.) (collecting cases).

The Bureau of Prisons has no record of receiving such a request from the Defendant (unlike his co-defendant, Richard Daniel). *See* Exhibit 2.[4] This absence is a sufficient reason to deny the Defendant's motion.

*B. The 3553(a) Factors Independently Preclude Relief*

The Defendant has failed to demonstrate that he is not a danger to the safety of the community, or otherwise merits release under the Section 3553(a) factors. *See* § 3582(c)(1)(A).

*First*, the Defendant's history and characteristics show that he is an extremely dangerous and violent. The Defendant pleaded guilty to committing multiple murders. As outlined in the letter from ASA Joshua Weintraub, the Defendant founded a gang called the "Terrorist Boyz" that were responsible for (at least) nine murders. *See* Exhibit 1C. The victims included a pregnant eighteen-year-old woman and a federal informant. The Defendant was the triggerman in at least

---

[4] However, because exhaustion is not jurisdictional, in the interest of judicial economy, this Court can deny the motion on the merits. *United States v Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (holding that § 3582(c)(1)(A)'s exhaustion requirement is a claims-processing rule, not a jurisdictional one).

two murders and several other attempted murders. These considerations of violence and firearms preclude relief. *See United States v. Marrero*, 11-CR-568, 2020 WL 7079483 at *5 (S.D.N.Y. Dec. 3, 2020) (noting that firearm offenders continued to recidivate later in life than non-firearms offenders and recidivated at nearly twice the rate of non-firearms offenders among those released after age 50); *United States v. Solomon*, CR 05-350, 2022 WL 357229 at *3 (W.D. Pa. Feb. 7, 2022) ("although statistics show that criminal defendants are less likely to recidivate as they grow older and move into retirement age, not all defendants cease engaging in criminal behavior when they grow old.").

Next, Section 3553(a)'s command to protect the community counsels against relief. The Defendant's conduct has not improved while incarcerated. He has a disturbing pattern of masturbating in front of female prison staff members, being found guilty in 2023 and 2024 of such conduct. The Defendant is not being found masturbating privately, away from others, but instead is directly confronting female officials in order to make them uncomfortable. Worse, the Defendant's cellmate falsely confessed to the conduct in order protect the Defendant—something he would be unlikely to do in absence of the Defendant's inducement. The Defendant remains a threat to the community.

The Defendant, in this respect, is not similarly situated to his brother. In granting Richard Daniel's motion, this Court noted that Richard Daniel had averaged a single violation per year, had no violations in three years, and no violent violations in a decade. (DE 380 at 10). But this Defendant is not similarly situated. He has had five violations in the last *calendar year*, including three involving sexual misconduct. Further, while perhaps not required, this Defendant, unlike his brother, has not proffered any evidence showing "personal growth and rehabilitation during his

time in prison." (*Id.* at 10). This evidentiary gap should weigh against reducing his sentence. The Defendant has shown that, both in 2002 and today, he cannot conform his behavior to the law.

Finally, the Defendant cannot show that his sentence is disparate based on what he would receive if sentenced today. To be sure, while the Defendant would not be subject to the same mandatory minimums today, it is far from certain that this Court would sentence a multi-time murderer to two decades in prison. Judges in this district routinely sentence murderers (or attempted murderers) to sentences in excess of 40 years or more. *See, e.g.*, *United States v. Herrera*, 14-CR-20286-CMA, ECF No. 400 (sentencing defendant convicted of murder in aid of racketeering activity to 480 months); *United States v. Campo*, 12-CR-20592-CMA, ECF No. 231 (sentencing defendant to life for obstruction of justice by murder), *amended by* ECF No. 361 (reducing sentence to 480 months pursuant to a Rule 35 motion); *United States v. Medina Rodriguez*, 22-CR-20054-ALTMAN, ECF No. 101; 102 (sentencing defendants to 420 months and 360 months for conspiracy to murder members of the uniformed services). Even if the mandatory minimums do not apply in the same way, that does not mean there is a disparity in the sentencing. At sentencing, this Court would have considered the Defendant's multiple murder convictions as substantial aggravating factors.[5]

In short, the Defendant's history and characteristics as a multi-time convicted murderer, his recidivist and recent sexual conduct while incarcerated, and the need to protect the public mean that the 3553(a) factors overwhelmingly weigh against his early release from custody.

---

5 In this respect, the United States is unaware of any mitigating factors—such as mental health or prior abuse—that would mitigate the Defendant's sentence. The Defendant was young (in his 20s) when he was sentenced but his serious misconduct has continued until he is now in his forties, showing that his prior misconduct was not an aberration of his undeveloped brain.

*C. The Sentencing Commission Lacks the Authority to Promulgate U.S.S.G. § 1B1.13(b)(6)*

The Defendant argues that the amendment to § 924(c)'s sentencing regime is an extraordinary and compelling reason supporting a reduction of his sentence (DE 400). Essentially, he argues that, pursuant to the First Step Act of 2018, he would not be sentenced to a stacked § 924(c) sentence of 60 months on the first § 924(c) conviction, 300 months on the second, and 300 months on the third conviction. While he is correct that today's sentencing scheme would yield consecutive terms of 60 months on each of the three firearms convictions, relief is not available to him under subsection (b)(6).

First, the Sentencing Commission exceeded its authority in promulgating subsection (b)(6), and acted contrary to the statute's plain text, structure, and purpose. Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t). Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive changes in law. As a matter of plain language, an intervening change in the law is neither "extraordinary" nor "compelling.".

Indeed, Congress's decision not to apply a statutory change in sentencing law retroactively

is neither extraordinary nor compelling. In 2018, Congress enacted the First Step Act and clarified the circumstances in which an enhanced sentence for a subsequent firearm conviction could be imposed under 18 U.S.C. § 924(c)(1)(C). *See United States v. Thompson*, 846 F. App'x 816, 818 (11th Cir. 2021) (explaining the First Step Act). Prior to the First Step Act, § 924(c) contained a stacking provision where, in the case of a second or subsequent conviction under § 924(c), a defendant was to be "sentenced to a term of imprisonment of not less than 25 years." *Id*. Section 403 amended this language so that the 25-year mandatory minimum on a second § 924(c) violation only applies if the first § 924(c) conviction has become final. *Id*. Instead, a defendant convicted of two or more § 924(c) violations in a single prosecution would now receive the ordinary minimum of each conviction as allocated in § 924(c)(1). *United States v. Rivera*, 824 F. App'x. 930, 936 (11th Cir. 2020). Importantly, the First Step Act did not make this change to § 924(c) retroactively applicable. *Thompson*, 846 F. App'x at 818.

The Defendant invokes Congress's decision not to extend the First Step Act's amendment to Section 924(c) to defendants like him as a change in law warranting a sentence reduction. He ignores the fact that Congress deliberately chose to make section 403(b) nonretroactive. § 403(b), 132 Stat. 5222.[6] In so doing, Congress adhered to "the ordinary practice" in "federal sentencing" of "apply[ing] new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012); *cf*. 1 U.S.C. § 109 (general nonretroactivity provision). Given that Congress made § 403 nonretroactive, there

[6] Section 403(b) reads: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b), 132 Stat. 5194, 5221–22.

is nothing extraordinary about the fact that Defendant's sentence reflects the statutory penalty that existed at the time he was sentenced. That sentence "was not only permissible but statutorily required at the time." *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021).

Next, subsection (b)(6) purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to Section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate. *See United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations). Therefore, recognizing nonretroactive changes in law as extraordinary or compelling reasons for a sentence reduction under Section 3582(c)(1)(A)(i) would undermine a primary purpose of the Sentencing Reform Act.

Moreover, the Commission's interpretation of Section 3582(c)(1)(A) as empowering district courts to apply nonretroactive changes in law to particular defendants is in serious tension with basic separation-of-powers principles. In upholding the Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta v. United States*, 488 U.S. 361, 396 (1989). The Commission does not pose a nondelegation or separation-of-powers concern precisely because Congress delegated to the Commission "nonadjudicatory functions that

do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent considering the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* U.S.S.G. §§ 1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6). The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997) (the Commission "must bow to the specific directives of Congress").

## IV. A HEARING IS NOT WARRANTED

The Defendant is not entitled to a hearing on his motion. District courts are not required to hold hearings in § 3582 proceedings or to even have the defendant present. *United States v. Phillips*, 597 F.3d 1190, 1198 n.18 (11th Cir. 2010). The issue is addressed squarely by the Federal Rules of Criminal Procedure. Rule 43(b) provides that "[a] defendant need not be present under any of the following circumstances: ... (4) Sentence Correction. The proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)(2)." Thus, although a defendant must be present at his initial sentencing, he "need not be present at proceedings involving the correction or reduction of sentence under...§ 3582(c)." *United States v. Parrish*, 427 F.3d 1345, 1347 (11th Cir. 2004). This principle "makes good practical sense because a defendant, in the federal penal system, often is hundreds if not thousands of miles away from the courthouse where his sentence was originally imposed." *United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir.), *cert. denied*, 528 U.S. 1023 (1999).

This circuit has reiterated these principles in recent cases arising in the context of Amendment 706. *See, e.g., United States v. Anderson*, 330 F. App'x. 773 (11th Cir. 2009) ("district courts are not required to hold de novo sentencing hearings for all career offenders based on Amendment 706 because a sentencing hearing is warranted only if the amendment lowered a defendant's guideline range"); *United States v. Gainer*, 2008 WL 5237241, *2 (11th Cir. Dec. 17, 2008) (not an abuse of discretion for court not to conduct a hearing "because the Federal Rules of Criminal Procedure permitted Gainer's absence from a § 3582 proceeding, and our precedent foreclosed the district court from reconsidering previously-adjudicated facts in this proceeding.").

Additionally, U.S.S.G. § 1B1.10(a)(3) expressly declares that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." Furthermore, "there is no statutory or constitutional right to counsel for a § 3582(c)(2) motion or hearing," *United States v. Webb*, 565 F.3d 789, 795 (11th Cir.2009), and by the same reasoning, due process does not mandate a hearing on a § 3582(c)(2) motion.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion should be denied.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: *s/ Daniel Rosenfeld*
Assistant United States Attorney
Florida Bar No. 111618
U.S. Attorney's Office
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33394
Telephone: 786-761-3144
Email: Francesse.cheron@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also mailed a copy to the of the response and all exhibits to the Defendant's mailing address, McCreary-USP, Post Office Box 3000; Pine Knot, KY 42635; ATTN: Max Daniel; Reg No. 68850-004

*s/ Daniel Rosenfeld*
Daniel Rosenfeld
Assistant United States Attorney